We're happy to hear argument in 1372-91, Jackson v. Lightsey. Good morning. No, good afternoon. Good afternoon, Your Honors. I may please support Daniel Farawa on behalf of the appellant, Samuel Jr. Jackson. Your Honor, Mr. Jackson respectfully requests that this court reverse the lower court decision dismissing the North Carolina Department of Corrections medical staff as a party. And reverse the dismissals of Mr. Jackson's deliberate indifference claims against Dr. Joseph Lightsey and Dr. Cher Guleria. Because the athletes don't challenge the arguments made in regards to the medical staff, I'd like to focus today on the deliberate indifference of Dr. Lightsey and Dr. Guleria. Could you talk up just a bit? Yes. Or maybe bring the microphone up closer to you. Oh, sorry. Thanks. So, I think, taking a step back, I think the mistake that permeates the district court's decisions and the athletes' briefs is that they did not construe Mr. Jackson's complaint with the liberal gloss that this court's precedent requires. And I think if you really take a second to read his allegations in the light most favorable to Mr. Jackson, it's clear that he states false claims of deliberate indifference. And I don't think this case is a difficult case, Your Honor. Taking a step back, Mr. Jackson was diagnosed… What is the relief that Mr. Jackson is seeking? Mr. Jackson is seeking both injunctive relief and monetary damages. And Mr. Jackson was diagnosed with congestive heart failure in 2003. He won't be able to get the injunctive relief against the doctors, I understand. No, Your Honor. We concede that because Mr. Jackson is no longer incarcerated at Central Prison where Dr. Lightsey works and because Dr. Guleria no longer works at Nash Correctional, that he is not entitled to injunctive relief from the appellees. But we submit that… What monetary relief is he entitled to against the doctors? Pardon me, Your Honor? What monetary relief is he entitled to? Damages, Your Honor? Yes. He requests $950,000 in damages for the pain and suffering that has resulted from the appellee's indifference. And I think, Your Honor, first we submit that the injunctive relief claim is still… Counsel, just so I understand this, Dr. Guleria no longer works at Nash and that's why there's no possibility of injunctive relief against that doctor? Yes, against that doctor. From our understanding, from appellee's representation, he no longer is employed by Nash Correctional. Is that in the record somewhere? No, Your Honor. Again, to the extent that their submissions before this court are accurate, which I would assume they are. But I'm looking… Is it in the motion to dismiss? Is it in the answer? Where does it say that Dr. Guleria doesn't work there? I believe they said it in their memorandum supporting their motion to dismiss before the… Just so I understand, does this all hinge on the thing in the answer where they say that Dr. Guleria is not employed, in quote marks, at Nash? I'm just trying to figure out what's going on here because it sure sounds from the answer like all they're saying is that there's no formal employment relationship. But I'm trying to figure out, is it also the case that Dr. Guleria no longer provides any medical services at Nash? I think our understanding is that he no longer provides medical services at Nash Correctional. But, again, that's to the extent that we, from appellee's representations, there's no evidence on the record. Assuming that he no longer provides medical services, we concede that injunctive relief would not be available from Dr. Guleria. But, Your Honor, as we submit that injunctive relief is available from the medical staff as a whole, and that is why the dismissal of the medical staff was erroneous below. Because Mr. Jackson's complaint of deliberate indifference implicate more people than just Dr. Leis and Dr. Guleria. Yeah, but the problem with that is that no appeal was filed timely with respect to all these other people. Your Honor, Mr. Jackson did not have an opportunity to appeal the 1958 finding until his whole case was dismissed below. So this was the first opportunity that he would have had to present the issues. I thought that the claims against the other doctors was earlier dismissed by the district judge. No, Your Honor. I'm not talking about the two, but the other doctors. Yes. The other doctors were not part of the institution. Yes, Your Honor. The claim against the medical staff was dismissed, but Mr. Jackson still had live claims against Dr. Guleria and Dr. Leis. Those were not dismissed. Right, and I thought you just now were talking about the claims against other people. Are you just talking about those two doctors? Your Honor, I'm discussing the 1915A frivolity dismissal and the 12B6 dismissal, Your Honor. Because Mr. Jackson's whole case was not dismissed at that juncture, an appeal at that point would not have been proper for this Court, under this Court's precedence. Mr. Jackson… Is there a case law that says that from this Court? Your Honor, I think, yes, Your Honor. The fact that Mr. Jackson still had an ongoing case before the district court, I think that interlocutory appeal would not have been proper at that point. Well, I thought that if you got out of the case altogether, those defendants got out altogether, I thought that an appeal would be right. But you say there's some case law. Well, Your Honor, this is just simply the principle that when there's still an ongoing case, a controversy at the district court, that you cannot appeal an interlocutory order. And we would submit that the 1915A dismissal here would be considered an interlocutory order because there were still live claims against the affilees in this case. But not against the affilees who were dismissed. Those claims were gone. Yes, Your Honor, I think an analogous situation would be assuming there was a qualified immunity judgment below and some… That's a law unto itself, qualified immunity and interlocutory appeal. Well, Your Honor, assuming the Court does not buy the 1915A for validated dismissals properly before this Court, I think Mr. Jackson had… Can I ask you just one more question on that dismissal? Yes. The notice of appeal, though, says very clearly that what it's appealing is only this July 2013 dismissal or the second dismissal. So isn't that an additional concern here? Your Honor, that can be an additional concern. But, again, because this was a pro se plaintiff, because he… We mustn't screw it liberally. Mr. Jackson would not have been aware of what exactly he was supposed to put in the notice of appeal like. But, again, Your Honor, because it doesn't seem like this is going anywhere, I'd like to focus on deliberate indifference of Dr. Jackson or Dr. Lightsey and Dr. Galerio. And, Your Honor, I think this is… So before you go down, I just want to be clear. Because, you know, you've got the medical… You've got the staff and the others involved. And if it sounds like to me you're moving away from that, this juncture, but if we… We're going to focus on the two doctors here. That's one focus. And then there's another focus that deals with the staff that, when conjunctively, may have some viability. Yes, Your Honor. I mean, but if it's been dismissed, or if it's no longer there, or if it's not properly pled sufficient to even bring it, because you didn't even… At least the pro se complaint didn't even list them as defendants in there. That's problematic. Yes, and, Your Honor, I think the problem here is that, again… I don't know what's going there, because it says you want to focus on the two doctors. So if you're doing that, then that's signaling to me that you're going to forget about these other ones out there. Because you want to run away from that argument, or run away from these questions. But stay with the questions if you want to argue that the medical staff outside of the two doctors should be involved here. Because at this point, it seems like to me you've left that. No, Your Honor, so I think, again, I stand by the point that a 1915A dismissal would be an interlocutory order if there are still live claims against other defendants below. Okay, and do you have any authority for that? Other than just the general principles of whether an interlocutory order is appealable or not. You'll look at the… because I was sort of questioning that myself, and if you go look at the Federal Rules of Appellate Procedure, it doesn't look like there's any allowance for that. But if you don't have anything, you don't have anything. You can go on and talk about whatever you want to. And again, Your Honor, and again, because this was a pro se plaintiff, he wasn't directed that he had to appeal that order at that exact time. I think just fairness, and this Court's precedent in Loewe v. Armstrong and Brown v. North Carolina Department of Corrections says, we must construe his allegations, we must construe his pleadings in the light most favorable to Mr. Jackson, and must give them all liberal gloss that would reasonably allow. And I think it's fair to say that a pro se plaintiff would not have known at that juncture that he would have had to have made an appeal, assuming this Court does not believe that that's an interlocutory order. It seems like there's almost a genuine notice problem here, right, given the at least very open question about whether this is a timely appeal, and the failure to mention either the staff, the NC North Carolina Department of Corrections staff, in the notice of appeal, or to, and to limit the notice of appeal to only the later, the subsequent dismissal. I mean, isn't there like a real notice problem? Those people aren't here, they're not represented because they thought they weren't in the case anymore. Your Honor, the medical staff were not served with notice of the appeal. Only Dr. Leitz and Dr. Glare were served with notice of appeal. But again, Your Honor, given, again, I just point back to this fact that this is a pro se plaintiff, he would not have known with, who to serve with particularity. Dr. Leitz and Dr. Glare are both employees of the North Carolina Department of Corrections medical staff. We believe that this was the right juncture to appeal the 1958 dismissal, and we believe that the allegations in Mr. Jackson's complaint support deliberate indifference against more than just Dr. Jackson, or, sorry, Dr. Leitz and Dr. Glare, that there are a number of other officials that are implicated in Mr. Jackson's unconstitutional medical care. For example, complaints went unanswered, alleging, according to Mr. Jackson's allegations. Dr. Jackson spent months without receiving medical care, according to Mr. Jackson's allegations. He suffered a heart attack because nobody interceded in his unconstitutional medical care. And those, again, while I will turn to Dr. Leitz and Dr. Glare's deliberate indifference in a moment. The problem with that is that if it's not a pro se plaintiff, at least from what I'm hearing you say, that certainly would be dismissed. You're asking us to treat this in a special way because this is a pro se plaintiff who rather innocently did this, and therefore we should say, well, there's actually an action against the Department of Corrections and other staff. Yes, Your Honor, and I think this court's precedent is clear, is that when a prisoner names unnamed officials in a complaint, that prisoner deserves the right to conduct at least limited discovery to see who those claims should be asserted against. And the district court did not afford Mr. Jackson that opportunity. He just said that there are no allegations against anybody but Dr. Leitz and Dr. Glare, and therefore dismissed his claim. If you actually construe his complaint properly, there are more officials other than these two doctors implicated in it. Isn't it like two opportunities the district court gave him, dismissed it without prejudice, and allowed him to amend, he came back, didn't quite make it that time, and then did it again, but then the court just said, well, dismiss. Yes, Your Honor, and again, he did get two opportunities to amend his complaint, but he was still a pro se prisoner with very few resources. He wasn't a lawyer. He didn't know how to name his complaints. He didn't know how to say the magic words or how to name the correct people. He wasn't entitled to a lawyer. Yes, Your Honor, he was not entitled to a lawyer, but he also didn't, it's uncontroverted that he didn't have a lawyer. And I think because he was a pro se prisoner, that the court should read his complaint with a liberal gloss. But turning to the deliberate indifference against the FLE sphere, I think it's a fairly easy case. Mr. Jackson came to Central Prison with a diagnosed heart condition, congestive heart failure. Nobody at the prison treated his congestive heart failure. That is not disputed. He was treated for a different heart condition, but however, as this court said in Johnson v. Canones, the failure to treat a condition can constitute deliberate indifference. This is not a case where Mr. Jackson came to the prison with a host of symptoms and a doctor made an erroneous diagnosis. Mr. Jackson had a disorder, and that disorder was never treated. And under Farmer v. Brennan, the Supreme Court said the failure to treat a condition or to verify the underlying facts can constitute deliberate indifference. Under Miltier, this court said that failure to intercede when a prisoner's health is deteriorating constitutes deliberate indifference. In IKO, they say delayed constitutes deliberate indifference upon showing that treatment is inadequate. In Cooper v. Dyke, it's a well-settled principle that once a prisoner presents a diagnosis, you have to treat that diagnosis. And even if you treat it and that treatment's not working, once it's clear that that treatment is no longer working, you have to do something to ameliorate the harm that the prisoner is suffering. It's a well-settled principle, you would say, that if a prisoner presents a diagnosis or walks in and says, oh, no, I've been diagnosed with this, that puts the prison sort of on notice. They must treat that prior diagnosis. The treatment can never change. Once someone is incarcerated, whatever treatment they're getting before incarceration, they are entitled to get. Your Honor, I wouldn't go that far. I think what I would say is that when a prisoner says, I have congestive heart failure, you have to provide medical records to back that up. The prison officials can no longer just refuse to treat that particular condition. That isn't exactly the record you have, though. Your Honor, I think it is. I mean, I think that amounts to what we do have here. It's not challenged that Mr. Jackson suffers congestive heart failure. It's not challenged that he said his medical records were provided to the prison. And it's not challenged that the prisoners did not treat the congestive heart failure. Can we go back to the records? What are you saying is unchallenged as to the records? I was actually a little bit unclear about what your position was with respect to what the complaint alleges as to the records. The brief says that Jackson told Dr. Lightsey that the records would be forthcoming, but not that the records were there and available to Dr. Jackson. Your Honor, so Mr. Jackson says that once incarcerated at Central Prison, medical records were provided by Dr. White as well as medical staff from county jail. So he says essentially that, again, construing the allegations in light of Dr. Jackson, that the medical records were provided to Dr. Lightsey upon his incarceration at Central Prison. Even your brief says a couple of times that Jackson told Lightsey that his cardiologist would be forwarding the medical records to the prison. Your Honor, I don't think it matters when exactly Dr. Lightsey received the records. But it matters that he did, and that's what I'm trying to figure out. Your Honor, I think the court in, for example, Langford v. Norris, the Eighth Circuit said that if a prisoner alleged that his medical records were presented to the prison generally, then it's fair to assume at the 12B6 juncture that Dr. Lightsey would have access to those medical records. Now, we don't know at this juncture whether or not Dr. Lightsey actually reviewed those medical records, which is why discovery is necessary here. But what we do know is that Mr. Jackson told Dr. Lightsey that he suffers from congestive heart failure, and that was never treated. But even putting that aside, even assuming that Dr. Lightsey was not working, and that treatment was not working by all objective measures. And Mr. Jackson says that his condition was worse than he complained multiple times to Dr. Lightsey and other prison officials, and nobody did… Is this a side-effects argument? Yes, Your Honor. The gout, the chest pains, the shortness of breath. And he says he complains… Do you think that makes that a constitutional claim? Your Honor, I think yes. I think when treatment's not working and prison officials do nothing to intercede… There are lots of medicines that cause side effects that still might be working. Your Honor, but I don't think… I don't think what we have here are just side effects. I don't think gout and kidney damage and blackouts are side effects. I think that's a clear sign that the medication is not working. And I think that's a sign that he's being further harmed by that course of medication. And the fact that they did not alter that medication or they delayed in treating the pain that he was suffering as a result of the medication is deliberate indifference. And they say in their briefs that when he had a heart attack, they sent him to the hospital. But a prisoner is not required to suffer a heart attack in order to receive adequate medical care. That's not the standard of deliberate indifference. And I'd like to point this court to Cooper v. Dyke because I think that provides a useful example. There the person was seen by a doctor and the question was whether he was shot or not. And the initial paramedic said he did not think he was shot. He began complaining once he was incarcerated that he had been shot and they didn't treat him until he was no longer responsive. And this court said that even after initial screening, if somebody complains that they're not receiving adequate care and they don't give them deliberate indifference, another case that is useful, provides a useful illustration, is Volonta. There the prisoner was receiving some medication and the prisoner was complaining that that medication did not work. And the court said some medication is not constitutionally adequate medication. I think the exact same principle applies here. This isn't a case where the prison is of limited resources or we're alleging that they should have known something that they wouldn't have been aware of or it's fairly straightforward. He had medical records. He had a number of signals. He had deteriorating health which he complained of and based on Mr. Jackson's allegations, nothing was done. Turning to Dr. Galeria, I think his case also presents, under this court's precedent, Miltier. I think that's deliberate indifference. He said that Mr. Jackson needed an EKG, needed a heart rate monitoring and he would request a consult with a cardiologist. Yet he took no steps to further the course of action which he believes to be medically necessary. And this court said the failure to implement your own orders that you believe to be medically necessary is classic deliberate indifference. And that's what we have here. And I see my time has expired so I'll reserve the rest for Rebecca. Thank you very much. Good afternoon. May it please the court. My name is Kelly Brown and along with my partner, Elizabeth McCulloch, it is my privilege to represent defendants Dr. Joseph Lightsey and Dr. Cher Galeria in this matter. The district court properly dismissed plaintiff's complaint for failure to state a claim for deliberate indifference for several reasons. Who's representing the Department of Corrections in here? Your Honor, I do not represent the Department of Corrections. They were dismissed prior to anyone making an appearance on behalf of the Department of Corrections. So there's no one here representing the staff other than the two individuals that you mentioned. That's correct, Your Honor. The district court's ruling was proper for several reasons. Plaintiffs asked this court to make several unreasonable inferences. Further, even the most liberal reading of the complaint shows that plaintiff is alleging nothing more than a disagreement with the medical care that he received. Plaintiff does not allege that these defendants had the culpable state of mind required for a deliberate indifference claim. And therefore, plaintiff's allegations do not rise to the level of constitutional violation. As a preliminary matter, this court lacks jurisdiction over this appeal because plaintiff did not name the court in his notice of appeal to which he was taking the appeal. Where else would he have taken it? Your Honor, in his notice of appeal, he actually… I asked you, where else would he have taken it but here? Your Honor, he also asked in his notice of appeal for an overturning of his… Where else would he have taken this appeal but to this court? This appeal would only come to this court, Your Honor. However, in his notice of appeal, he asked for the overturning of his criminal conviction. I mean, I understand. We like to be expeditious on things but, I mean, if he can only come… He's pro se. He can't have a lawyer. He's a civil case. They won't even let him have a lawyer. He's asking the court to have a lawyer and he makes an appeal from the Eastern District of North Carolina and unless you can tell me someone else who can reverse the Eastern District of North Carolina directly, I know the Supreme Court can, I guess. I've just never seen it done. Probably has been done. Isn't this the only place he can come? This is the only place that he can come to hear the appeal on the district court's dismissal, Your Honor. You are correct. However, the United States Supreme Court has stated that the Rule 3 mandates are jurisdictional in nature and in U.S. v. Cone, this court held that a motion for extension of time failed to comply with Rule 3 because it did not name the court to which the appeal is taken. Assuming that this court finds that it does have jurisdiction to hear this appeal, the district court's dismissal was proper. Taking the factual allegations as pled by plaintiff, plaintiff alleges that he was examined by both Dr. Leitze and Dr. Galleria. At the single visit with Dr. Leitze, plaintiff alleges that Dr. Leitze examined him, made a diagnosis of a heart arrhythmia, which he called a heart arrhythmia, lowered the dosage of one medication, and prescribed a different medication for his heart condition, a diuretic. So the only issue is it's not injunctive relief, it sounds like to me, because I thought I heard the other side say it. At least as to these two injunctive relief is not available. So the only issue we have here is whether monetary damages can be obtained against them. Yes, Your Honor. Plaintiff has conceded that That standard is determined by the plausibility standard under Rule 12b-6. This was a motion to dismiss and therefore this court must look at the complaint and analyze it and not accept conclusory allegations or mere unreasonable inferences. But this is 12b-6 and we look at that complaint and I guess like we take all the allegations in favor of the plaintiff that he's made there to be true. And do we give any consideration this again as a pro se plaintiff as opposed to a seasoned lawyer like yourself who would write this? Your Honor, affording liberal construction to a pro se pleading and the plausibility standard I set forth in Ashcroft v. Iqbal are not mutually exclusive. We can still afford liberal construction but even the most liberal reading of this complaint shows that he only alleges medical treatment. However, the plausibility standard The last word, medical negligence you say? A medical treatment. He alleges medical treatment and a disagreement with the medical treatment that he was provided. Counsel, if you read it again sort of most generously it sounds like the allegation is that he was diagnosed by an expert cardiologist as having one disease. And then he, in the screening thing Dr. Lightsey doesn't just misdiagnose him but re-diagnoses him even though he's not an expert. He's told my expert cardiologist says I have congestive heart failure and Dr. Lightsey says look, I'm no expert but that's not what it looks like to me and just re-diagnoses him. Why isn't that somewhat different than just your standard allegation I was misdiagnosed? That is not our reading of this complaint or what a reasonable inference would allow one to read from this complaint. He alleges that in 2003 Would you say that if that is a reasonable inference they would have stated a complaint? If he had and let me make sure I'm understanding your question. There was an expert diagnosis and then a non-expert discarded that diagnosis and re-diagnosed the patient knowing that he was not expert in this area. Assuming that that were stated on the complaint would that in your mind state a claim for deliberate indifference? No, Your Honor. The United States and Estelle V. Gamble has held that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim for deliberate indifference under the Eighth Amendment and furthermore medical malpractice does not become a constitutional violation simply because the prisoner is an inmate and so therefore even if the reasonable inference is that this was a misdiagnosis that would not state a claim for deliberate indifference. Not a misdiagnosis a re-diagnosis by a non-expert doctor. So the patient walks in and he has been diagnosed by a cardiologist with congestive heart failure and then a non-cardiologist doctor says I'm no expert but that doesn't sound right to me. Isn't that different from your average misdiagnosis case and might that rise to the level of deliberate indifference? No, Your Honor. Not as pled because he's alleging that Dr. Lightsey prescribed two medications to treat the if we use your term re-diagnosis. So he used treat two medications two heart medications one diuretic and one beta blocker to treat a heart condition which does not rise to the level of deliberate indifference. A prisoner is not entitled to choose his course of treatment. Mistreatment must be capable of characterization as cruel and unusual punishment to present a colorful claim that as a result of taking those medications his health went down? Excuse me, Your Honor. Doesn't he allege that as a result of taking those medications that should not have been given to him or were different because he changed it his health went down? Your Honor, he also alleges that the heart attack may have been due to borderline diabetes or high cholesterol and therefore the reasonable inference would be that when he presented with an acute condition he was sent to the hospital and that's not the action of a deliberate indifference. If the complaint allocations is true or do we look for inferences? Your Honor, you take all the well pleaded allegations as true. So the unreasonable inferences in this complaint and there are several unreasonable inferences that plaintiffs would have this court make. For instance, he alleges that this plaintiff must take these exact medications and dosages to treat his medical condition and that is an unreasonable inference. As Iqbal stated, this court can draw on its reasonable judicial experience and common sense and in doing so and drawing on judicial experience this court is well aware that medication is constantly changing and that a medication that was prescribed in 2003 to treat a chronic heart condition may not be what Dr. Lightsey saw when he diagnosed the patient in 2000. Would we do that at a 12B6 stage or would we do that a little later down in trial? Your Honor, this at the 12B6 stage we need to look at the complaint and discard any conclusory allegations and look for unreasonable inferences and discard those as well and it would be our contention that plaintiffs make several unreasonable inferences that this court is not accepted is not not obligated to accept as true and one of them would be that he now alleges in brief that he requires open heart surgery and that's not contained anywhere in the complaint. Also, I think you can look on the allegations of this complaint as pled in particular the Zoloft medication that he alleges that he needs. It's reasonable for this court to infer that that was not prescribed for his heart condition. Zoloft is an anti-depressant. Furthermore, the anti-inflammatory medications that he also says he was receiving prior to incarceration are anti-inflammatory medications such as ibuprofen and that that would be our contention that that's also not reasonable to infer that was to treat his medical condition. Counselor, are you really alleging that Dr. Lightsey changed Mr. Jackson's diagnosis kind of with bad intent in order to let's see in an attempt to deem plaintiff fit for duty purposes that this was done sort of on purpose to make him available for work duty? No, Your Honor. It would I believe your question was possible and that's what the complaint said and I don't think that it would be a plausible inference that that's why Dr. Lightsey in a physician who examined a plaintiff and treated him and diagnosed him with a medical condition was doing so in order to declare him fit for duty purposes. So on this one you're saying yes that's what the complaint says but it's just not plausible under Iqbal. Is that the idea? Yes, Your Honor. It is not plausible and we would contend that this court is not entitled to accept and not to give that the assumption of truth because it's not plausible and it's not a reasonable inference because on the face of the complaint he alleges that he was treated by Dr. Lightsey and Dr. Galeria. He alleges that he was examined by both of these physicians. Using one's medical judgment to diagnose a condition, prescribe multiple medications, examine the patient, these allegations are far cry from deliberately ignoring a serious need for medical care. This is not conduct that is grossly inadequate, grossly incompetent or excessive so as to shock the conscious. Well, can we turn to Dr. Galeria for a minute since you brought him up? What about the allegation that he failed to enter orders, never took any action? Your Honor, that strikes me as not a not an ordinary kind of complaint that you get from medical malpractice. Your Honor, as we read this complaint and one reading of the complaint is that Dr. Galeria that he was seen by a physician's assistant named Hines who prescribed medication and referred him to Dr. Galeria and Dr. Galeria said that he would be provided with the EKG. However, we do not believe that this arises to the level of a constitutional violation because the Eighth Amendment delivered in different standard requires that a prison official must act with a sufficiently culpable state of mind and plaintiff as alleged in this complaint alleges that he told nursing staff, he told the NCDOC medical staff, he did not allege in his complaint that he told Dr. Galeria that he was not receiving the EKG and without that allegation Your Honor, this cannot rise to the level of deliberate indifference because Dr. Galeria examines him and Dr. Galeria says to him I'm going to order an EKG to monitor your heart rate for 24 hours I'm going to give you a special diet and I'm going to utilize review for consult with cardiologists and then it turns out lo and behold that Dr. Galeria has never even entered orders for any of those things. And I believe that he doesn't have to he's in prison he can't just be a private investigator about whether Dr. Galeria has entered the orders or not. Well, and he in this complaint is alleging that he told the nursing staff or the medical staff he asked them about the orders. He does not allege that Dr. Galeria He alleges Dr. Galeria told him he was going to do it. That's where if there is liability it seems to me it comes in. Your Honor, That's not ordinary malpractice. If you say I'm going to do something and this thing would have helped you and you don't do it that seems to me arguably shows indifference. Well, there's no allegations complaint that Dr. Galeria knew that the orders were not being implemented by other health care providers. And furthermore, P.A. Hines Where is that allegation? I said there is no allegation that he Well, how is he to know? Has Dr. Galeria been deposed? No, Your Honor, this is Presumably that will all come out in deposition. Dr. Galeria can say that entered the orders or he didn't say it or he can say whatever he wants to say.  have the complaint for what it is. Your Honor, we do not believe that discovery that this complaint as pled would unlock the doors to discovery because it is not a reasonable inference that Dr. Galeria was even told that those orders were not implemented. Well, You brought the word inference and I want to follow up on Judge Mark's question because we are looking right at the complaint here and it says Defendant Galeria informed the plaintiff and then he told him what he was going to do. And then the next sentence says after seven months nothing happened. We just take that as truth. We don't ask whether Dr. Galeria actually did inform or whether he went and looked at other staff or whether he told someone to do it. We just got this. This is 12B6. And then after that he is informed by medical staff that Dr. Galeria   And then we have to take this allegation as true which is our position that it would be an unreasonable inference. But if you take it as true, the Supreme Court has stated that the How are you going to get an unreasonable inference if a complaint says Defendant Galeria informed the plaintiff of the allegation here which is here. He said it. That comes later after you go through discovery and then you maybe be at a summary judgment stage or wherever you say after discovery there's evidence You don't even do discovery. Maybe you write an affidavit that can't be answered like most lawyers do. Your Honor, we believe that the deliberate indifference standard requires the actual knowledge, not that they should have known, not that Dr. Galeria should have known that his orders were not being implemented, but that he actually knew that his orders were not implemented. And there's no allegation here that the medical staff told Dr. Galeria. Let me modify the response here. So, if the complaint had said, everything it says, but it also said, Dr. Galeria knew that he had not recorded any new orders, that that would be a sufficient complaint. Under the reading of Estelle, that an EKG or an X-ray or additional diagnostic techniques, the failure to provide those does not necessarily  indifference. Does Estelle involve a doctor who told the patient, I'm going to do 1, 2, and 3, and then does not do 1, 2, and 3, and knows he did not do 1, 2, and 3? No, Your Honor. No. No. Is there a case that says that? No. Well, I asked, but I was going to your answer. Adding into the complaint the allegation that Dr. Galeria knew, and I was asking you if that would be sufficient. That would not be sufficient to state a claim for deliberate indifference because deliberate indifference is the unnecessary and wanton infliction of pain. That's a good answer because that complaint says exactly what Judge Galeria said. Your Honor, it would be requirements that these requirements of the rule of the Eighth Amendment spring from the Eighth Amendment themselves, that absent intentionality, a condition imposed on an inmate cannot properly be called punishment, and absent severity, such punishment cannot be cruel and unusual. He must allege that Dr. Galeria did not know. If it says that, then it would allege a complaint. Not only that he knew it, but he knew it would cause harm. Then he would have alleged a complaint. Is that right? That's what you just said. Yes, that he must allege, not that he should have known, but that he did know. I understand that. He did know. He needs to have known that Dr. Galeria needs to have known two things you're saying. One is that the things that he himself told Dr. Jackson he would get for Mr. Jackson that those were necessary. I think we can assume that he wouldn't have told Mr. Jackson that I will get you these things unless he thought they were necessary. Why else would he have told Dr. Jackson I'll get you the EKJ, I'll get you the heart monitoring. I assume he only said that because he thought they were necessary, not because he thought they would be fun. We're done with that one. All this hinges on whether Dr. Galeria knew that he had not put those orders in the chart or perhaps he knew they weren't being carried out. He knew he didn't put them in the chart. He knew he didn't put any orders in the chart. And that it would cause a risk, a substantial risk. Again, why would he have told Mr. Jackson that he needed those things if he didn't know that without them Dr. Jackson would be at risk. Yes, I see what Your Honor is saying. However, we believe that the deliberate and different standard requires not just that the officer should have known and recognized it but that they actually perceived the risk and that they were aware from the fact that a substantial risk of serious harm exists. The requirements of the Constitution do not protect against a mere disagreement with medical treatment. A disagreement that an EKG I actually think we do know that and it's better or more helpful to us if you can directly address the charges here rather than the general legal  Yes, Your Honor. Well, it is our contention that this complaint as read under the plausibility standard does not meet a claim for deliberate dismissal. One quick question so I have this straight. Dr. Galeria, does he still provide medical services at NASH? Not that I'm aware of, Your Honor. In our answer, as you pointed out, we noted that he was no longer employed at NASH and that was in response to the wording of the complaint that employed by but it's our understanding that he no longer works  Thank you, Your Honor. Thank you. Your Honor, just a few quick points as I realize I'm standing between you and lunch. First, going to the  the North Carolina Department of Corrections medical staff, 28 U.S.C. 1291 says that a person can only obtain medical services if they are   dismissed. And because that is the final order and because that final order incorporates the dismissal of the medical staff, we believe that this was a proper juncture for the appeal to be made. Turning to Judge Harris's question about a re-diagnosis, Your Honor, I think there's a big difference between a misdiagnosis, which was what you had in Estelle v. Gamble, versus what you have here as a re-diagnosis. Because essentially, a re-diagnosis amounts to not treating the condition that the prisoner has. And, for example, Hudson v. McHugh, I think, from the Seventh Circuit, provides a good example. They're the plaintiffs suffering from epilepsy. They determined that he no longer had a medical purpose other than sheer malice. They just wouldn't give him his medication. No doctor had ever said, I don't think he needs it anymore. Your Honor, well, the fact that it wasn't provided, I think it's fair to infer that somebody assumed he didn't need it anymore. But, if I have congestive heart failure, it's a lifelong condition, and that condition is no longer treated, something bad will result. And that's exactly what happened here. Mr. Jackson suffered a heart attack. And that is deliberate indifference. And assuming the re-diagnosis in and of itself is not deliberate indifference, the failure to mitigate the risk once that  no longer working is deliberate indifference. And this court has said it in Cooper, the court has said it in Eco, and a number of other circuits have said a similar thing, that once medication is no longer working, if nothing is done to intervene and change that medication, that's a classic case of deliberate indifference. And again, Your Honor, I'd just like to point this court back to Delonta. Because I think, again, I think that provides a useful framing of the issues here in regards to Dr. Leitze. We're not saying that Dr. Leitze provided no medication whatsoever. We're saying Dr. Leitze provided no hormonal therapy. She was being provided with therapy from a psychologist. And this court said at the 1915 stage that just because she was still self-harming does not mean that treatment is constitutionally adequate. And here, I'm not challenging the fact that Dr. Leitze prescribed some treatment. But once it was clear that that treatment was no longer working and nobody stepped in to intervene and correct that course of treatment, that is deliberate indifference on the district court's precedent. And if there are no further questions, I ask that this court reverse the district court. Thank you. Thank you very much. Mr. Clerk, I will ask the clerk to adjourn court and then we'll come down and say a letter to the witness. This honorable court stands adjourned until tomorrow morning at 930. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Diana Gribbon Motz, James A. Wynn, Jr., Dennis W. Shedd, James A. Wynn Jr., Pamela A. Harris